**Efthimois NARLIDIS, Petitioner-Appellant,**

v.

**Omer G. SEWELL et al., Respondents-Appellees.**

**No. 74–1234.**

United States Court of Appeals, Ninth Circuit.

Oct. 22, 1975.

---

Mark W. Rollins of Boggust & Dotson, Brawley, Cal., for petitioner-appellant.

Peter Bowie, Asst. U. S. Atty., San Diego, Cal., for respondents-appellees.

## OPINION

Before CHOY and GOODWIN, Circuit Judges, and EAST,* Senior District Judge.

EAST, Senior District Judge:

Efthimois Narlidis, petitioner-appellant, (Narlidis) appeals from the District Court's order dismissing his petition for a federal custody Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 and directed to Omer G. Sewell, supervisory detention and deportation officer, and other personnel of the Immigration and Naturalization Service (INS). We affirm.

## FACTS

Narlidis is a 20 year old native citizen of Greece and a member of the Greek Navy assigned to and serving on the Greek ship of war H. S. Kountouriotis, which was docked in the Port of San Diego, California on January 9, 1974. On that date, Narlidis was granted a 24 hour leave from the ship's service. He signed himself out, went ashore, and never returned.

On January 19, 1974 at Brawley, California, which is located approximately 140 miles from San Diego, Narlidis married an American born citizen.

On January 29, 1974, officials of INS arrested Narlidis. They advised him that he was being held as an illegal deserter and would be delivered to the Greek naval authorities.

---

* Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

## STATEMENT OF THE CASE

On January 31, 1974, Narlidis filed his petition alleging substantially the foregoing statement of facts and further that he had not deserted his naval service and had been unlawfully taken into custody. He also asserted that his surrender to the Greek Navy would result in his removal from the United States without any opportunity by hearing or other due process to contest his right to stay under a claim that he was the spouse of an American born citizen, and that he should be granted political asylum.

Based upon these allegations, the District Court issued a temporary restraining order restraining INS from further acts toward the surrender of Narlidis unto Greek Navy officers.

The INS, upon learning that the H. S. Kountouriotis was to depart from the Port of San Diego on Sunday, February 10, 1974, moved to dissolve the temporary restraining order. The INS grounded its motion on a 1902 Convention (treaty) between the United States and the sovereignty of Greece, pertaining to the apprehension and return of deserters from Greek ships of war, together with Executive Order No. 11,300, 3 C.F.R. 576 (1966). The District Court heard the motion on February 8, 1974 and after argument concluded that Narlidis should be surrendered to Greek naval authorities. That decision is stayed pending this appeal.

## 1902 CONVENTION, EXECUTIVE ORDER, AND REGULATIONS

*Convention:*

In 1902, a Convention was entered into between Greece and the United States which defined, *inter alia*, the rights and privileges of the respective consular officers in the contracting countries, particularly in our concern here with reference to deserters *from* the Greek Navy. The Convention was ratified by the Senate, signed by the President, and proclaimed on July 11, 1903. 33 Stat. 2122.

Article XIII of the Convention provides in relevant part:

"The said consuls-general, consuls, vice-consuls and consular agents are authorized to require the assistance of the local authorities for the arrest, detention and imprisonment of the deserters from the ships of war and merchant vessels of their country; and for this purpose they shall apply to the competent tribunals, judges and officers and shall, in writing, demand said deserters, proving by the exhibition of the registers of the vessels, the rolls of the crews, or by other official documents, that such individuals formed part of the crews, and on this reclamation being thus substantiated the surrender shall not be refused. Such deserters, when arrested, shall be placed at the disposal of the said consuls-general, consuls, vice-consuls and consular agents, and may be confined in the public prisons at the request and cost of those who claim them, in order to be sent to the vessels to which they belonged, or to others of the same country." 33 Stat. 2131.

*Executive Order:*

President Johnson's Executive Order No. 11,300 issued on August 17, 1966, provided in its pertinent part for the designation of " . . . the Attorney General . . . and such other officers and employees of the Executive Branch . . . as he may specify, to be the 'local authorities' and 'competent officers' . . . within the meaning of Article XIII. . . . The Attorney General, and [his] designees . . . shall fulfill the obligations assumed by the United States pursuant to Article XIII [as] therein prescribed." 3 C.F.R. 576 (1966) [1] [hereinafter cited as Executive Order 11,300].

---

1. In 1915, Congress adopted a Seaman's Act which abrogated the provisions of the Convention relating to "merchant vessels" and their crews. The Seaman's Act, also, whether by design or mistake, repealed the provisions of an authorizing statute, Revised Statute Section 5280 (1875), Act of March 2, 1829, 4 Stat. 359 as amended by the Act of February 24, 1855,

*Regulations:*

28 C.F.R. § 0.110 (1966) is the Attorney General's Order which designates INS officers as local officials authorized by Executive Order 11,300. It provides:

"The Commissioner [of INS] and immigration officers (as defined in 8 C.F.R. § 103.1(i) are . . . designated as 'local authorities and competent officers' . . . within the meaning of Article XIII."

8 C.F.R. § 252.5 (1966) was promulgated by the Commissioner of INS pursuant to the provisions of 28 C.F.R. § 0.110 (1966) and authorizes in substance that officers of INS, upon receipt of a written request by Greek authorities, per Article XIII, to take custody of the designated ship of war crew member, serve him with written notification of the charges as soon as practical, and further to hold within a reasonable time an examination of the crew member with right of counsel, and if from such examination it is determined that:

"(1) The individual sought by the . . . Greek authorities had deserted from a . . . Greek ship of war in a United States port; (2) the individual actually arrested and detained is the person sought; (3) this individual is not a citizen of the United States; and (4) this individual had not previously been arrested for the same cause . . . the individual shall be served with a copy of the findings, from which no appeal shall lie, and be surrendered forthwith to the . . . Greek authorities is they are prepared to remove him from the United States."

## DISTRICT COURT PROCEEDINGS

At the District Court hearing, Narlidis and his counsel were present. The Government introduced into evidence the oral testimony of two witnesses and four documents. No evidence was presented by Narlidis. Therefrom the District Court found in substance that:

(1) INS had served Narlidis with written notice of the charges and conducted an examination of Narlidis in the presence of his counsel on February 7, 1974, whereat INS had found that:

(a) "[T]he Greek Embassy, through a Consular Agent, has requested the arrest and return of . . . Narlidis [an alleged citizen of Greece] and deserter from the Greek ship of war H. S. KOUNTOURIOTIS on or about January 9, 1974;"

(b) "[A] certified copy of the crew list of H. S. KOUNTOURIOTIS identifies [a] Narlidis as a member of said crew;"

(c) "[Narlidis] acknowledged he was [the charged] Narlidis and that he did desert the H. S. KOUNTOURIOTIS;"

(d) "[Narlidis] is the . . . Narlidis referred to, and the charges alleged are true;"

(e) "[Narlidis] is not a citizen of the United States;"

(f) "[Narlidis] has not been previously arrested for the same cause."

(2) In substance, each of the findings of fact made by INS as above stated were true and substantiated.

(3) Narlidis departed the H. S. Kountouriotis while within the Port of San Diego, California on January 9, 1974 for an authorized period of liberty; that upon expiration of that authorized period and to the date of the hearing, he had not returned to his ship, and said absence was and is not authorized.

(4) The 1902 Convention between the United States and Greece is in force and effect as it applies to

---

10 Stat. 614, which identified and authorized the "competent national or local authorities" who were to assist the consular agents upon a request under the Convention. *See generally* *United States ex rel. Martinez-Angosto v. Mason,* 344 F.2d 673 (2d Cir. 1965). Hence, the necessity of the issuance of Executive Order 11,300 to fill the gap.

crew members aboard ships of war, as evidenced by the volume, *Treaties in Force,* published by the United States Department of State, 1 January 1973, and Executive Order 11,300 is in full force and effect.

(5) INS received a written application from a Consular Agent of Greece, in accordance with Article XIII of the 1902 Convention, between the United States and the sovereignty of Greece, which application requested the return of Narlidis, identifying him as a deserter from the Greek ship of war H. S. Kountouriotis, and invoked the provisions of Article VII of the Convention.

The District Court, upon the foregoing findings of fact, concluded that:

(1) Narlidis was a deserter in the context of the 1902 Convention, and his arrest and detention by INS for ultimate delivery and surrender to the Greek naval authorities as a deserter from his ship aforesaid were lawful; and

(2) Narlidis' claim of statutory or executive leave to remain in the United States as the spouse of an American born citizen or on grounds of political asylum is untenable.

Based upon those conclusions, the District Court dissolved the temporary restraining order and dismissed Narlidis' petition and cause.

## ISSUES FOR REVIEW

We glean from the poorly framed contentions three probable assignments of error as follows:

(1) The District Court erred in concluding that Narlidis was a deserter from the Greek ship of war H. S. Kountouriotis within the 1902 Convention;

(2) The District Court erred in concluding that the INS lawfully arrested and detained Narlidis as a deserter for immediate surrender to the Greek naval authorities; and

(3) The District Court erred in concluding that Narlidis was not entitled to a hearing on his claim for political asylum.

## DISCUSSION

*Issue 1:*

Narlidis asserts that when he left his ship at the Port of San Diego, he had no intention to desert from his naval service and fully intended to return to his ship prior to the expiration of his shore leave. It was not until after his marriage at Brawley and for the love of his wife that he formed the intention to and did desert from his naval service to his ship of war. Therefore, he is not a deserter within the context of the 1902 Convention.

■ It seems that the crux of that assertion rests not on the issue of desertion from the naval service per se, but on the issue of where and when the intention to desert joined with the act of desertion. In support of that rationale, Narlidis relies upon the holding of this court's decision in *Medina v. Hartman,* 260 F.2d 569 (9th Cir. 1958) [hereinafter cited as *Medina*].

We are satisfied that Narlidis' reliance upon *Medina* is misplaced as the terms of the Greek treaty involved here and the Spanish treaty involved in *Medina* are different. In *Medina,* Spanish Navy sailors left their ship of war at an American port with authorized leave. They traveled into Mexico where they formed the intention to and did desert. The sailors were rather involuntarily induced to return to the United States where they were then taken into custody by INS. The Spanish-United States treaty in force and effect provided in relevant part:

"The [consular authorities] of the two countries may respectively cause [the early return of crew members] of ships of war . . . of their nation who may have *deserted in one of the ports of the other.*" (Emphasis supplied).

No such language is used in the treaty with Greece which is involved here. This court in *Medina* applied the military law of the United States (10 U.S.C. § 885) and thought that both an unauthorized absence from duty and the intent to desert were required, and from the facts concluded "that the [Spanish] treaty section is inapplicable here because [we are] satisfied that the desertion of the sailors *did not occur in an American port,* but in Mexico." (Emphasis supplied). 260 F.2d at 570.

Narlidis claims the evidence reveals that he did not form the intent and did not desert until after he was at Brawley, some 140 miles distant from the Port of San Diego, and that accordingly he is entitled to relief under *Medina.* We conclude otherwise as Article XIII of the 1902 Convention between the United States and Greece contains no such limiting language as "deserted in one of the ports of" the United States. Rather, it merely provides for the "arrest, detention and imprisonment of the deserters from the ships of war . . . of their country." Thus, we distinguish the *Medina* decision from the case here. Issue 1 is without merit.

*Issue 2:*

■ Issue 2 is without merit. The findings of fact by the INS and the District Court respectively are each supported by ample relevant evidence. The District Court's conclusion of lawful arrest and detention of Narlidis for ultimate delivery to Greek authorities is supported by the treaty and United States law.

*Issue 3:*

■ The claim of Narlidis that he is entitled to remain in the United States as a non-citizen spouse of an American born citizen under immigration law is frivolous since the 1902 Convention obligates this court to return Narlidis on demand of the Greek government.

■ Narlidis asserts that he is entitled to a hearing on his petition for political asylum under 8 U.S.C. § 1253. That section deals with the Attorney General's discretionary authority to *withhold deportation* of any alien to any country in which the alien might be subjected to judicial persecution.

The simple answer to that claim is that the assertion of the right of asylum is addressed to the executive as a matter of discretion and does not present a substantive question. The attempt to pose the question as one of due process does not convert a matter of grace into a matter of right. Issue 3 is without merit.

The order of the District Court dismissing Narlidis' petition is affirmed.

The mandate herein shall issue forthwith and no petition for rehearing will be entertained. Fed.R.App.P. 2.

Affirmed.